All right, the majority of the cases on today's calendar have been submitted on the briefs and record, and we'll issue decisions in those cases in short order. The case that's set for argument this morning is Hwang v. National Technology and Engineering Solutions of Sandia. When you're ready, counsel. Go ahead and take the lectern. May it please the Court, Your Honors. I'm Ed Hollington. I represent Dr. Robert Hwang in his lawsuit for discrimination and retaliation against NTESS. If that's okay, do you refer to that? I think we all can agree that's... I'd also like to ask permission to reserve a minute and a half for rebuttal, if that's okay. Sure. Of course. I'll try to help you out, but keep your eye on the clock as well. Thank you. On January 29th, 2020, Dr. Hwang submitted his action plan pursuant to the policy and the PEP, Performance Expectation Plan, which had been issued to him previously. In that action plan, he had noted his concerns about discrimination that he had been experiencing since. The Honeywell took over operations and brought in their new supervisors in 2017. He also addressed specifically in that action plan, which is in the record, the specific complaints that had been made against him regarding leadership. In particular, he had noted that the accusations were broad generalities. They were... The fact that he did this a month later, I mean, you're sort of glossing over some important facts here. He submitted... I mean, first of all, he retired a month earlier, and then he decides he doesn't want to, and then submits it a month later. The fact that it was so late, why isn't that grounds for them to say... I mean, it sort of defeats the purpose of a PEP if you can't even comply with the direction to submit one in the first place. Well, first of all, policy 15.1, which is also in the record and governs these proceedings of implementing performance improvement plans, does not have a specific time for submitting the action plan. It was... No, but they told him to respond within 24 hours. Now, I understand you have a separate argument that that wasn't enough time, but when your do respond within 24 hours on a different alternative, and then you wait another month, I don't understand why they would be compelled to accept that. Because there are no limitations on the... In the policy about when to do the action plan, number one, number two, the action plan was submitted. There's nothing in that policy that prohibits one changing their mind about the action plan or about which option. Let me ask you this, and I'm going to cover the same area, I think, where Judge Nelson's going. So let's say they say, submit your action plan within 24 hours. He fails to do that a month later. He comes up with the action plan that he eventually submitted in January. You might have an argument there. He missed the deadline by quite a substantial amount. That's a different case, though. In this case, he was given numerous options, three different options, and he chose the retirement option. He submitted his request, and it was accepted by the employer. So now you're saying, well, they have to undo that and allow him to come back on a PEP. Why is that, and what case stands for that proposition? The position we're presenting in this is that it's a retirement, not a resignation. He crossed out the form that had resignation on it and put retirement. The retirement plan governs the person who wants to retire. Dr. Wong was told he could withdraw his notice of his intent to retire. Remember, his retirement is two months later, in March. Well, yes and no. I mean, he said he was going to, his last day in the office was going to be January 7th, and then he wanted to use vacation days. I understand the technical argument there, but he basically said, I'm done. I'm not going to show up. On the books, you can keep me on because of the vacation I'm going to use. But he'd already left the office. I assume they'd already had whatever retirement party they would have for him. I mean, the assumption was he was done. They were looking for a replacement. They had only posted the position at that point when he, on January 29th. But he was told by the benefits office, which controls, and that's who he was referred to for questions about retirement, that he could withdraw his notice of retirement any time before the effective retirement date, which was March 12th. And there were no restrictions, and this he did. In fact, Dr. Wong knew two other executives who had done that. Is there a case law on that? Because I agree with you that he did not resign. He retired. At least the record seems to be that. Are there cases that treat those two steps differently? Obviously, if he'd resigned, is your position, if he resigned effective March 20th, that he could also rescind the resignation? If that were the policy or practice of the employer to allow, which is exactly what was presented to him, and we have an admission, a conclusive admission, that others had been allowed to rescind their retirement notice. Again, the case law would point to is not specifically on point of retirement, but when the courts analyze whether there's adverse employment action, they're doing it based on an employment contract. And our position is this is a retirement issue which is not governed by the employment contract. It's governed by a retirement plan. And he is informed that he could withdraw his retirement before the effective date. And that's a conclusively established fact, that others were allowed to do that, and the influence the jury could make except for him. Does the policy – I hadn't focused on this. Where is this, by the way, in the record? What's that? Policy that says – or maybe it's not in the record. You're saying this was an oral conversation with the benefits department that he could rescind his retirement. That's in Dr. Wong's declarations and the conclusively established fact that – Can you point me to the record on that? And one reason why I want to look at that is, is the policy such that he has an automatic right to rescind the retirement or that he can offer to rescind the retirement and then they have discretion on whether to accept that rescission? The testimony is that he was told he could withdraw the notice of retirement as long as it was done before the effective date, and that he personally knew others that had announced a retirement in the future, withdrawn their retirement, and were allowed to resume their job duties. In addition, we have the admission that others by – But he doesn't know whether others had tried to rescind their retirement and that had been rejected. That's not – we don't know that in the record. I know, and that's why I'm asking because it's important whether that – even under your theory, whether that was an automatic right or whether it was a discretionary right. And I'm not sure I've gotten the answer. It was related to him by the benefits that as the only restriction on withdrawing his notice of retirement was that it be done before the retirement date. Yeah, that sounds at least like an estoppel argument. Let me ask a slightly different question, and that is I want to focus on the letter that was signed on the 16th of December that says you basically have until 8 a.m. the 18th to make up your mind. According to what I've seen in the record, he tries to figure out what differential consequence there might be if he retires or if he's fired. And he wants to know if he's fired, does he get to retain his retirement benefits? HR is unable to respond to him in the 24-hour time frame, and in order to make sure that he preserves his retirement benefits, he retires rather than going forward with a course of action that he's pretty sure is going to result in his being fired. Does he have a claim for coercive, constructive termination based on that? That, Your Honor, plus the other facts of the discrimination history against him. But, yes, that was the precipitating question he didn't have answered, couldn't have answered within that 24-hour period, which we think was an unreasonable amount of time to give him to make such a monumental decision. Okay, I'm expecting that the other side is going to say that he didn't really raise the claim of constructive discharge, or if he raised a claim of constructive discharge, he did not make the argument that I was coerced. Rather, he made only the argument that these were terribly unfavorable conditions of employment. So how do you respond to their argument that I anticipate, that say you didn't make that argument in a timely fashion? Your Honor, we did. If you look at the pleadings, particularly our complaint, paragraphs 17 through 33, we lay out both the history of the discriminatory conduct against him and the events leading up to that December 16th. In addition, the joint case management documents that were filed pursuant to Rule 16C all specifically included, there were four of them, the constructive discharge claim in those, and the 1983 committee comments to Section 16.C specifically says if you leave an issue out of your pretrial order, such as the 16.C pretrial orders, then you've waived that. So those were clearly noticed, and that was in the record, and those facts established what we think are sufficient facts of constructive discharge, although when he learned that he would not lose those benefits if he were terminated and that others were allowed to withdraw and he knew his retirement, that is what then he came forward and decided to put those issues before. My question was a little narrower than you're responding to, and that is assuming he made a constructive discharge argument, the only constructive discharge argument that the district court responds to in the written opinion is that the conditions of employment were so intolerable that it amounted to constructive discharge. The district court does not discuss, well, it was coerced, given the fact that he was only given 24 hours, and in that period he was put to an impossible choice. Did you make the argument to the district court that it was constructive discharge because the 24-hour period was putting him to an impossible choice? We did. Where did you make that argument? One of those factors. Questions? Would it be in your declaration, counsel? Is that what you're relying on, the declaration by Dr. Huang talking about how he couldn't get a response to whether he would lose his retirement benefit on time, and so he went through each option and the downsides of each option and ultimately selected the retirement option? The retirement was not even an option. No, I understand. I understand he crossed it out. But it's not the evidentiary record. I'm trying to help you out in response to your question to Judge Fletcher. It was in our response to the motion for summary judgment that issue the series of what we consider the totality of circumstances establishing a constructive discharge event that culminated on December the 16th. So assuming that you did argue sufficient facts to allege a constructive discharge claim based on a coercive theory, does the fact that he waited an entire month undercut that? Well, the facts will show that he waited the entire month because he did not find out until later in January that he was not going to lose his retirement benefits if he were terminated. So that was part of the timing of that event was confirming for himself what would happen or not happen if he were terminated with 25 years of retirement benefits built up. I know you wanted to save a little bit of time, so I'll put two minutes back on the clock. Okay, thank you. Is that my time? Yes. Thank you. May it please the Court, Marsha Piconi with Fox Rothschild appearing on behalf of the Defendant Appley, who I will refer to as Entess if that is okay with the Court. All right. Plaintiff's claims fail because he cannot show an adverse employment action. There was no adverse employment action when he chose to voluntarily retire, and this is important, without the possibility of rehire. In response to the performance. Okay, without the possibility of rehire. I didn't see that as an issue in this case. What I saw and what we just heard was there was a possibility to rescind the retirement, which he's claiming he did. So address that. I view that as a different issue. I don't know if you were trying to sort of squeeze that into a rehire, but that seems like it's a different issue than rehire. The question is, could he rescind the voluntary retirement? No, Your Honor. He could not. There is nothing in the record that supports that he was given an opportunity to rescind. Well, wait a minute, counsel. I'm looking at his declaration, paragraph 33. It says, I rescinded my intent to retire on March 12, 2020. I was told by my Sandia retirement officer that employees can change their retirement plans up to the last day of payroll. That is what plaintiff claims he was told, but there is also. Right, but why doesn't that create a material question of fact? Because a reasonable employee could not expect at that point, a month and a half later, that he would have an opportunity to rescind under the Burlington Standard. It's an objective test. Do you say that that evidence is inadmissible? No, I am not suggesting. So you concede that he was told, for purposes of summary judgment, you concede that he was told that he could rescind his retirement. No, we do not concede that he was told. But he just says he told, and you think the evidence is admissible. You're saying he's lying? No, what I'm saying, Your Honor, is that there is no substantiation for plaintiff's comment that he was told that he could rescind his retirement. Wait a minute. You say there's no substantiation. Are you saying that he's lying? Because he says this is true. It's a sworn declaration. You're saying that that is evidence. So what are we supposed to do with it? I mean, it seems to me that if it's evidence, it's evidence he was told that. It's totally unsupported, Your Honor. Well, why does it need any other support than the fact that he swears that it's true? Because there is unrebutted testimony in the declaration of the HR manager that no NTES employer director who had ever retired in response to a PEP has ever been permitted to rescind the retirement. But that doesn't address the question of whether he was told this. I mean, I don't know. I don't know if it gets him where he needs to go, but I'm confused by your argument here. I would assume that you would say, no, that's an admissible hearsay. But that's not your argument. Your argument is it's not inadmissible, we just can't consider it, which seems counterintuitive on some of the judgment. No, Your Honor. Maybe I misspoke. That is not admissible evidence. That is plaintiffs, that is inadmissible hearsay. You just changed your answer. You realize that? Your Honor, I'm trying to respond. I'm not. I understand that the declaration said it is unsupported in the record by any other evidence, and it is not enough. You keep coming back to that, and that doesn't help you. The question is you keep this is summary judgment, and on summary judgment, every inference is to be construed in the plaintiff's favor. So we can't resolve facts. If there are two opposing facts, we can't say, well, he lied and the other, your employee has more credibility. And I think that's where the confusion really is because you're saying there's a lack of corroboration. Is that relevant to determination of whether he has sufficient evidence to create the material question of fact to overcome summary judgment? I don't think you need that level of corroboration, which is why Judge Nelson and I thought, too, you were going to say this is hearsay. We don't even have the name of the employee in the record. Your Honor, it is an objective test, and a plaintiff had no reasonable belief that he could rescind his retirement. His retirement had already been accepted. It was a month and a half. His retirement was accepted a month and a half. If I suggested that that was admissible evidence, then I misspoke. I perhaps did not understand your question, Your Honor. But he had no reason. It's an objective test under the Burlington standard. At the summary judgment stage, the question is whether the evidence could be made admissible. We're not in the courtroom. It's a different standard of admissibility at summary judgment. Do you realize that? Your Honor, I'm not sure that I'm following your question. I think that the point is, even if it was inadmissible, you don't necessarily win, because if he could show that it would become admissible at trial, that's enough at the summary judgment stage. He could subpoena the person who told him that and put that person on the stand as a witness at trial. That still does not, for summary judgment purposes, as a matter of law, the trial court got it correct in its determination that he had not shown a retaliation claim. And this comes up in the context of plaintiff's retaliation claim. And I guess your backup argument is, even if that were admissible or could become admissible and we were to consider the fact that he was told he could rescind, that wasn't an automatic right and that they still chose not to accept that. And even if that's all true, then there's no evidence of discrimination on their decision not to accept. There is no evidence of discrimination, no evidence of retaliation on their decision not to accept. At the time that he was given... Let me separate out retaliation from discrimination and speak only to discrimination. We're told that he has evidence that others were permitted to rescind their retirement. Do you disagree that there's evidence of that? There is a request for admission. There is no evidence that any other NTES employee or director who retired in response to a PEP had ever been permitted to rescind their retirement. You put something else in there in response to a PEP. If you take that qualifier out, is there evidence that anyone is ever permitted to rescind a retirement? Plaintiff submitted some evidence suggesting that, yes, Your Honor. Stating that or suggesting that? He refers to a request for admission. And what was admitted? That there were individuals who were allowed to rescind their retirement. That, however, does not matter here because in this situation, we have to go back to the December time frame. Plaintiff was put on a PEP. He had three choices. He could have submitted an action plan, he could have resigned, or he could have had his action plan initially reviewed. He chose at that point to voluntarily retire. He also tries to claim that that's a constructive discharge. It is not. He wanted his job back. First of all, he did not plead constructive discharge. And the trial court recognized this. Assuming he pleaded, giving somebody one day to make a decision of this sort of consequence seems very unusual to me. Your Honor, that is the policy. He was given a decision day off, and that is NTSA's policy with regard to when someone is being put on a PEP. He had three choices. He was not facing imminent termination at that time. He was being asked to improve his managerial issues that had been going on for quite some time. Right, but he was given one day to either come up with his own PEP, resign, or appeal. Those were the three choices that he was given 24 hours to decide, right? This goes to Your Honor's questions, and I'm sorry I don't remember which one of you asked this, but the questions with regard to whether he had pled that his retirement, or excuse me, that he was coerced or that it was somehow involuntary, he did not plead that. Or excuse me, it's raised for the first time on appeal. That issue was not before the trial court. He did not make that claim contrary to his statement that there is evidence regarding that. Well, his declaration detailed the kind of pressure that he was under when he had that 24-hour period. He tried to figure out whether his retirement benefits would be at risk. He couldn't get the answer within the time period. So faced with that very small window to make a decision of this consequence, he chose the option that he thought was best. Why isn't that declaration sufficient to lay out a coercive theory? He did not plead that. Or excuse me, Your Honor, I keep saying he did not plead. He did not make that argument. He made that argument for the first time on appeal. He had choices at that time. He may not have liked his choices, but the cases provide that. He was given a choice. He was not threatened with imminent termination. He was provided the time as every other employee is provided the time. What if he had come in and asked for an extension? Would that have been given or you would have said, no, our policy is you've got 24 hours, you decide. Your Honor, I don't know that I can answer that because I don't know that there is anything in the record that addresses that issue. Part of the problem here is he didn't get the information from HR that would have been very helpful and quite significant to his decision within the 24-hour period. Go ahead. He certainly could have chosen to submit an action plan during that time frame. He had the same decision-making time that every other employee at Sandia did have with regard to whether or not he, you know, in response to a PEP. And there is no deviation from that. With regard to the constructive discharge, I claim it is- I just want to make sure I understand what you're saying is that the policy and test is that you're given 24 hours. He was given a day off. Right, but that's policy. You're saying this is how you handle performance reviews or placing employees on a PIP in the past as well? Because you keep saying it's consistent with policy. I don't understand what that means. He had 24 hours. He had a day off to make a decision when he was given three choices, and those choices included submit an action plan, resign without the possibility of rehire, or have the PEP initially reviewed. That is what happened. That is how end tests is. That's what he was told on those times. And that's how it was handled with regard to other employees in the past? Is that what you're saying? Yes. The other issue regarding that is that he waited one and a half months to submit a request to rescind his retirement. And you have to look at the time. Is there an indication of when he received the information from HR? It seems like his decision to un-retire was related directly to the loss of benefits. And so how long did he wait? There was a process by which he learned that he wasn't going to get benefits, but he would have if he was terminated. He waited one and a half months. That's not my question. My question is how long did he wait after he learned from HR that this was going to have a material effect on his benefits? Your Honor, there is no evidence that suggests that. Because, again, his statement that he learned from HR is unsupported. No, no, no, no. He clearly learned from HR at some point. That's not unsupported. You acknowledge it. He lost his benefits, and at some point he learned that he was going to lose his benefits. He did not lose his benefits. Your Honor, there is no evidence in the record, there is no support that he ever lost any of his benefits or that he was going to lose his benefits. I thought that's what the whole thing was about. So we'll hear from him in rebuttal. Well, perhaps, maybe, Your Honor, I'm not sure that I understand your question then. He was concerned that he was going to lose his benefits. He was concerned that he was going to lose his benefits. He was driven by that concern. Yes, he is concerned that he was going to lose his benefits. But that's not actually accurate? Again, Your Honor, I don't know. Yes, he says he is concerned he was going to lose his benefits. That's not my question. My question was, is there a material difference? Was he going to lose his benefits because he retired and not lose his benefits if he was terminated? It seems odd to me that that would be the case. He was never going to lose his benefits, whether he retired or whether he was terminated. And when did he learn that it would make no difference with respect to his benefits whether he was fired or terminated, whether he was fired or retired? There is some suggestion that that was also in late January. So to follow up from Judge Nelson's question, I think the answer is at the time that he responded to the December 16th letter, he did not know whether he would retain his retirement benefits if he were fired. That is what he says. Excuse me, Your Honor. There's evidence that that's so. Okay. And we're at summary judgment, so for purposes of summary judgment, we believe that. He says, I later learned that I would receive my retirement benefits even if I were fired. And then he says, I would like to un-retire. Isn't that the sequence? Yes, Your Honor. And how long between the time he learns that he would still get his retirement if he were fired and he's coming in and saying, I would like to un-retire? Weeks, Your Honor. I cannot give you the exact amount. But it's fairly prompt. That is what he's. So it's fairly prompt. It's not like he waited a month and a half to un-retire. He learns that his benefits will not be, he will not lose his benefits if he's fired. And then I think pretty promptly, and we can get something from your adversary as to precisely if it matters, he comes back in and says, okay, I'd like to un-retire. I think that's the story we're required to accept at this point in summary judgment. Your Honor, he did not make that argument in the trial court. This is not an argument. This is just a statement of, this is a narrative of fact. Your Honor, it looks as. . . Sorry, go ahead. The red light came on, so I want to be mindful. No, go ahead and finish. What I was going to say is that there is. . . We would ask that this court confirm. . . Excuse me, affirm the trial court. The district court reached the correct result in resolving this case on summary judgment. Plaintiff exercised his free will in choosing to retire instead of entering into the PEP process. The voluntary retirement in response to the PEP is fatal to his discrimination retaliation claims. There was no constructive discharge. It was not pled. He did not suffer an adverse employment action as a matter of law. As far as the constructive discharge, he would like. . . He wanted to come back, so there's certainly no evidence of any intolerable working conditions. And to ask this court to please to affirm. Thank you, counsel. Let's put two minutes on the clock. The. . . Counsel, can I. . . I know you had some other issues, but I just want to make sure I'm clear on the record here, because I had the impression coming into this that he thought he was going to lose his benefits, and there was. . . I thought he'd actually learned that he was going to lose his benefits, which I found odd. Am I misrecalling this? The facts are that he did not know the effect. He was fearful he was going to be terminated by the two supervisors. He did not know what would happen to his 26 years of benefits. But it turns out there was no material difference, and you agree with that? That when he learned that he would not automatically lose his benefits if he was terminated. . . I see. That's when. . . Okay. And that was in mid-January when he learned that from the retirement benefits people, the number two things, you're not going to lose. . . You won't lose your retirement benefits if you're fired. Okay. And you can withdraw your notice of retirement at any time. And I'm sorry to take up your time, but I'm sure the chair will allow you to say what you need to say. But at the time he's making up his mind during the 24-hour period, he seeks information from HR. Will I lose my benefits? HR couldn't tell him. Correct. So he had a reason for doubt. Yes, Your Honor. And they couldn't get back to him until January? We're not able to get back to him. He didn't get the information back until January. And does the record show why he didn't simply ask for an extension of time until he got the answer? Because part of the difficulty for your case is he chose option B, but it does say, I will be coded as a resignation. He crossed it out and put retirement without possibility of rehire, and he checked that. Now we have to determine whether that was voluntary. Why didn't he ask for an extension until he got that answer on the benefits? Again, he was in somewhat of a panicking mood about losing his benefits. He wanted to get that answer first. So to protect himself, he elected the retirement, scratching out resignation and putting in retirement instead of resignation. So it was the convergence of all these on a very short notice and literally panicking about losing his retirement if he is subsequently fired. Hindsight, yes? I understand the argument. Our questions actually took you over time, but let me see if my colleagues have additional questions. I just want to point out that the court in ruling that the retaliation claim, no pretext was shown, in this court it repeatedly said the timing, in this instance, nine hours between the protected activity and the refusal to let him come back to his position, his job duties, is an extremely short time. Right, I understand that argument. I think we've got it. You're actually, counsel, you're over time. Oh, I'm sorry. But we appreciate your very helpful arguments, both sides in this case. The matter is submitted and court is adjourned.
judges: FLETCHER, NGUYEN, NELSON